## Case No. 2,693.

CHOMQUA v. MASON et al.

[1 Gall. 342.][1]

Circuit Court, D. Rhode Island. Nov. Term, 1812.

PLEADING—STATUTE OF LIMITATIONS—REPLICATION—AGENCY.

1. It is a good replication to a plea of the statute of limitations, that the plaintiff is a foreigner, and has never been within the limits of the state where the suit is brought.

2. What words amount to an authority to take up money on credit.

At law. Assumpsit [against James B. Mason and others, executors of John Brown] to recover the amount of a promissory note, given by one Colvin Dana in behalf of the testator. The note was in the following words:

"Twelve months after date I promise to pay Mr. Chomqua or order three thousand seven hundred and sixty-four dollars with fifteen per cent. interest, being for the balance of the ship General Washington's cargo.

"For John Brown, Esq.

"Colvin Dana.

"If the note is not paid in twelve months I am to pay eighteen per cent. after.

"Witness, James Oliver.

"Canton, March 15, 1802."

The defendants pleaded, 1. The general issue. 2. That the testator did not promise within six years before the date of the writ. 3. That the action did not accrue against the defendants within six years. To the second plea the plaintiff replied, that at the time of making the promise the plaintiff was, ever since has been, and still is beyond sea, and out of the United States of America, to wit, at Canton aforesaid, in the empire of China, whereof he is and ever hath been a subject, as aforesaid; and this, &c. To the third plea the plaintiff replied in substance as to the second plea. To these replications there was a demurrer and joinder. On the trial of the general issue, the plaintiff proved the note aforesaid, and also a letter of instructions given by Brown to Capt. Simon Smith, the master of the ship General Washington, on the voyage on which the note aforesaid was given. It was admitted, that Capt. Smith died during the voyage, and before the arrival of the ship at Canton. The letter was as follows: "Providence, November, 1800. Capt. Simon Smith, Sir: You having the command and sole control of my ship General Washington, and cargo, bound round Cape Horn to the north-west coast of America, which being a long distance, you no doubt stop in Chili for refreshments of such supplies as you may stand in need of, and with the cargo you may get for the cargo you car-

---

[1] [Reported by John Gallison, Esq.]

ry out, you may return home or proceed to Canton, as you think most to my interest, and as it is most likely you will proceed to Canton, I shall give you my letter of credit, so as to enable you to bring home a very valuable cargo of China, bohea, and green teas, nankeens and silks, &c., but I hope you will carry such a valuable cargo to China, that you will be able to purchase a very valuable return cargo without getting any credit, say from 120,000 to 160,000 dollars. The ship being coppered and fitted at so large an expense, that there must be a very valuable cargo returned to make a tolerable voyage, as the outfits, with the additional expenses of insurance, wages, interest of money, provisions and port charges, duties, &c., &c., when all added to the outfits, will make so large a sum as without a valuable return cargo there can be but little, if any, profit in the voyage. You'll therefore get a large credit, if you find it necessary, to load. As to your prudence and economy throughout the voyage, I have the fullest confidence in it," &c., &c. "If any thing happens to you, which renders you unable to command, your first mate, Mr. Edward Cole, must command the ship in your stead, and Mr. Colvin Dana, your assistant supercargo, must act in your place as to the sale and purchase of the cargoes. I think you will find no difficulty in getting all the credit, which you may want, to fill the ship with a cargo at Canton of 150,000 or 160,000 dollars, should you not carry there more value than 120,000 dollars; but I am in hopes, that you'll carry there a cargo to the value of 150,000 dollars. But be this as it may, you will take care to lay out your money for such articles, as are not generally to be had for credit, namely, nankeens, china, and silks; the teas are generally to be had with more ease for credit than the above articles are. If you find you can fill the ship with very valuable articles with the cargo you carry, and the credit you get, which is commonly for twenty-two months or two years without interest, you will in this case take less china and bohea tea, and more of the valuable articles." The residue of the letter is immaterial to be recited.

STORY, Circuit Justice, at the trial, ruled, that in the event that happened, namely, the death of Capt. Smith, Mr. Dana had authority to purchase on credit, in the same manner as Capt. Smith, under the letter of instructions, and under his direction on this point the jury found a verdict for the plaintiff.

After verdict, the counsel for the defendants moved for a new trial, on the ground of misdirection of the judge on the point aforesaid, and this motion came on to be argued before the court at the same time with the argument on the demurrers.

Burrill and Robbins, for defendants.

The question as to the sufficiency of the plaintiff's replication, as to the second and third pleas, depends upon the construction of the proviso in the 3d section of the statute of limitations of Rhode Island. 1 Acts R. I. 472. The words are, "Provided, &c., that if any person or persons now, or who hereafter shall be, entitled to any such action, shall be, at the time any such causes of action accrued, within the age of twenty-one years, feme covert, non compos mentis, imprisoned or beyond sea, then and in such case, such person or persons shall be at liberty to bring the same within such times, as are herein before limited, after their being of full age, discovert, of sane memory, or at large, or returned from beyond sea." We contend that no person is within the proviso, except persons, who originally were resident in Rhode Island, for such persons only can be said to return from beyond sea. Foreigners, who have never resided in the country, are not within the intent of the proviso.

Tristram Burgess and Searle, for plaintiff.

The legislature never intended to apply the statue of limitations to contracts made with foreigners, but only to contracts made between citizens or residents of Rhode Island. If the legislature did intend otherwise, still as the remedy and not the right is bound by the statute, it can apply to suits only, which are brought in the state courts, and not in those of the United States. It is not competent for the legislature of a state to circumscribe actions in the courts of the United States. But at all events the plaintiff is within the proviso. He was beyond sea, when the cause of action accrued, and has not been within the United States; the statute, therefore, cannot run against him. Strithorst v. Graeme, 3 Wils. 145.

STORY, Circuit Justice. There can be no reasonable doubt in the case. The proviso saves the action, as to all persons beyond sea at the time when the action accrued. The statute does not begin to run against such person until his return. How then can it affect the present plaintiff? He has always been "beyond sea;" and admitting that the language of the exception, as to returning from beyond sea, be correctly expounded by the defendants' counsel, it will not help the defendants. It would only prove, that the statute could never run against the plaintiff, since he would be within the saving clause, and without the exception. But the true construction of the statute is, that the party shall have six years after he comes into the state to pursue his legal remedy. The case of Strithorst v. Graeme, 3 Wils. 145, 2 Bl. 723, is decisive, if so plain a position needed an authority to support it. See, also, Ruggles v. Keeler, 3 Johns. 263, the same point recognised, and Dupleix v. De Roven, 2 Vern. 540. The language of the statute of limitations of Rhode Island, as to the enacting clause and proviso, is substantially the same as the English statute. 21 Jac. 1, c. 16, §§ 3, 7. As to the more general question, which has been raised, how far a statute of limitation of a state shall be permitted, in a court

of the United States, to bar a remedy upon a foreign contract made in a foreign country, and by its terms not restricted to be executed within such state, I give no opinion. It is an important question, which will require much examination, as to the lex loci operating on contracts. It will be sufficient to decide the question, when it cannot otherwise be avoided. I shall adjudge the replications good.

Robbins then shortly argued the motion for a new trial, and contended that Dana had no authority to bind the testator upon the true construction of the letter of instructions; that the authority of Dana was confined to purchases to be made with ready money, and not on credit. He was a special and not a general agent.

STORY, Circuit Justice. I retain the opinion, which I expressed at the trial. The interests of commerce require a liberal construction of maritime contracts and authorities. The object of Brown was, in case of the disability of Capt. Smith, to confide to the mate the navigation and command of the ship, and to Mr. Dana the whole authority as to the sale and purchase of the cargoes. The owner looked to the purchase of a cargo partly on credit; he expresses his designs in the most clear and decisive language, and looking to the possible inability of Smith, he directs the purchases and sales to be made by the supercargo. What purchases, may I ask, are here meant? The defendants' counsel say, purchase for ready cash. But could this be the serious intention of the owner? The outward voyage might have been unsuccessful. The funds might have been inadequate to any considerable purchases. The vessel might have arrived at Canton without money sufficient to purchase any considerable cargo; was she then to return in ballast? I think that such a construction can hardly be contended for. The owner has not limited the purchases to be made by the supercargo to be purchases for cash. He uses the words with reference to the preceding statements, and I do not feel at liberty to interpose a limitation in his language, where he has used none. There has not been a shadow of evidence, to show that Mr. Brown was dissatisfied with this conduct, and I cannot believe that there ever could have been. I shall over-rule the motion for a new trial, and give judgment for the plaintiff.

Judgment for the plaintiff.